# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| ADAM JAMES STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:15-CV-00344-MGG |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On August 6, 2015, Plaintiff Adam James Stewart ("Stewart") filed a complaint in this Court seeking remand of the Social Security Administration's ("SSA's") final administrative decision denying the continuation of his Disability Insurance Benefits ("D.I.B.") based on the SSA's termination of benefits effective November 15, 2011. On April 18, 2016, Stewart, filed his Opening Brief and a Medical Summary and Statement of Relevant Facts. On July 26, 2016, the Defendant, Commissioner of Social Security, ("the Commissioner"), filed a Memorandum in Support of the Commissioner's Decision and a Summary of Relevant Medical Evidence and Testimony, to affirm the ALJ's denial of D.I.B. Stewart filed a reply brief on September 29, 2016. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## I. PROCEDURE

On August 6, 2008, the SSA found Stewart was disabled because of Post-Traumatic Stress Disorder ("PTSD"), migraines, a back injury, multiple concussions, hearing loss, and high blood pressure, as of January 14, 2016, and therefore awarded him D.I.B. [DE 10 at 116]. The

SSA determination date of Stewart's disability is known as the Comparison Point Decision ("C.P.D."). Upon regular review of Stewart's eligibility for D.I.B., pursuant to 20 C.F.R. § 404.1589, the SSA terminated his benefits as of November 15, 2011, and sent him a Notice of Disability Cessation. [DE 10 at 113-16]. The termination date of Stewart's D.I.B. is the date of Stewart's medical improvement. On November 15, 2011, the date of cessation, the SSA sent a Notice of Disability Cessation to Stewart, terminating Stewart's D.I.B. [DE 10 at 113-16]. On December 8, 2011, Stewart filed a request for reconsideration before a Disability Hearing Officer. On May 22, 2012, the Disability Hearing Officer concluded that Stewart was not eligible for D.I.B. After filing a timely written appeal, Stewart attended an evidentiary hearing with the SSA Disability Hearing Office on February 26, 2014. The hearing was held before an ALJ, in Valparaiso, Indiana, where a vocational expert and two medical experts testified. On March 28, 2014, the ALJ issued his decision finding Stewart was not disabled as of November 15, 2011, the date of cessation of his D.I.B. Stewart appealed the ALJ's decision on April 4, 2014, to the SSA's Appeals Council. On June 3, 2015, the Appeals Council denied Stewart's request for review citing the ALJ's decision. Stewart now seeks judicial review of the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g) by filing his complaint in this Court on August 6, 2015.

## II.     RELEVANT BACKGROUND

Stewart was born on March 22, 1984, and was 21 years old on the disability onset date of January 14, 2006. Stewart is a high school graduate and enlisted in the National Guard where he received military training at the School of Infantry in Fort Benning, Georgia. In December 2004, Stewart entered into active duty for tours in Iraq. While in Iraq, Stewart incurred service-related injuries, which included a back injury and PTSD. After an honorable discharge, Stewart

received treatment through the Department of Veteran's Affairs ("VA").  Stewart previously worked as a laborer in an auto repair shop and worked as a maintenance worker.  Stewart can complete basic household tasks, pay bills, and has cared for pets, which helps reduce his stress.

### A.    Plaintiff's Testimony

When asked about his physical impairments, Stewart testified that he continues to have lower back pain, flashbacks, episodes of anxiety, and migraine headaches.  Stewart testified that his migraine headaches are triggered by noise, smell, and sound.  When asked about physical limitations, Stewart stated that he could lift and carry objects up to thirty pounds, for five to seven minutes at a time.  Stewart also stated that he uses a cane for walking, even though it has not been prescribed.  Furthermore, Stewart stated that he has difficulty kneeling and climbing stairs as he feels pressure in this back.  Stewart also testified that the VA assessed him with an eighty-percent disability and that he receives VA benefits as a result.  When asked about his mental limitations, Stewart stated that he suffers from depression and has trouble with learning new things and following directions.

At his February 26, 2014, evidentiary hearing, Stewart testified that he remained incarcerated in Plainfield, Indiana after a DUI arrest on January 10, 2014.  Stewart testified that his incarceration prevented access to any medication except those prescribed for his high blood pressure and high cholesterol.  Stewart stated he purchased Tylenol or Advil through the prison commissary to alleviate his lower back pain.  Stewart further testified that he had not participated in any work assignments or light-duty assignments while incarcerated.

### B.    Medical Evidence

When Stewart was initially approved for D.I.B. in 2008, he was diagnosed with a closed head injury, a back injury, a cervical strain, migraines headaches, PTSD, and hearing loss.

Stewart received treatment for PTSD through the Northern Indiana Healthcare VA from 2009 through 2011. After receiving D.I.B., the S.S.A. subsequently undertook a periodic review of Stewart's disability status. Stewart continues to argue that he is in fact disabled. The record before this Court documents Stewart's medical history dating from his C.P.D. of August 6, 2008, and includes records prior to and subsequent to Stewart's medical improvement date of November 15, 2011. The record also includes medical reports from consultative psychological disability examiners, medical records from the VA, the State agency psychological opinions, and a confidential health summary and case analysis from the Social Security Administration.

Records from Stewart's treatment at the Northern Indiana Healthcare VA show that Stewart was assessed with a fifty percent service-connected disability for PTSD, a fifty percent service-connected disability for migraine headaches, a ten percent service-connected disability for lumbar sacral or cervical strain, a ten percent service-connected disability for tinnitus, a zero percent service-connected disability for impaired hearing, and eighty percent service-connected disability overall. [DE 10 at 462]. Stewart maintained treatment for his PTSD through the Northern Indiana Healthcare VA until 2011 when he stopped responding to its notifications to reschedule appointments.

On January 20, 2012, as part of the re-evaluation of his D.I.B. eligibility, Dr. Bradford J. Eaton, a consultative examining psychologist, conducted a psychological evaluation of Stewart. Dr. Eaton's exam notes show that Stewart was fully oriented during the examination and that he maintained logical thought processes. Dr. Eaton observed that Stewart carried a cane but did not rely on it. Dr. Eaton also observed that Stewart was able to solve mental arithmetic problems, recalled short-term and remote memory, complete word analogies, and interpret proverbs. Stewart informed Dr. Eaton that he was able to maintain daily function, was independent, and

had no difficulties with routine living tasks. Stewart also informed Dr. Eaton that he does arts and crafts and was currently making camouflage clothing for hunters. Dr. Eaton diagnosed Stewart with PTSD and a GAF score of 65. Finally, Dr. Eaton concluded that Stewart appeared capable of managing his finances independently.

On February 3, 2012, Dr. Stacia Hill, the State Agency psychological consultant, completed a Psychiatric Review Technique Form in which she opined as to Stewart's mental Residual Functional Capacity ("R.F.C."). Dr. Hill concluded that Stewart was cognitively capable of unskilled work-like tasks on a sustained basis without special considerations in a competitively, though not necessarily highly social, work environment. Dr. Hill also found that Stewart had mild restrictions in activities of daily living, mild difficulty in social functioning, moderate limitation in concentration, persistence, and pace, and no episodes of decompensation of extended duration.

On July 11, 2012, Mark Henson-Bohlen, a clinical Licensed Master Social Worker who had been working with Stewart at the South VA since June 22, 2012, wrote a letter on Stewart's behalf describing Stewart's military history and opining that Stewart shows symptoms of PTSD. Mr. Henson-Bohlen stated that Stewart had been deployed in Iraq and described his various military duties. Mr. Henson-Bohlen also stated that Stewart was involved in combat situations. Further, Mr. Henson-Bohlen opined that Stewart has symptoms of PTSD including nightmares, flashbacks, fear of crowds, and panic attacks and that he was easily startled. Finally, Mr. Henson-Bohlen stated that Stewart had headaches, stomach problems, and back pain.

During the February 2014, evidentiary hearing before the ALJ, Dr. Leon Fischer, a board-certified family physician who had reviewed Stewart's medical records, testified as an impartial medical expert at the evidentiary hearing regarding Stewart's work ability. Dr. Fischer

stated that Stewart should be able to lift and carry fifty pounds occasionally and twenty-five pounds frequently as well as sit, stand, and walk for six hours in an eight-hour workday. Dr. Fischer also stated that Stewart can frequently climb, balance, stoop, kneel, crouch, or crawl and that the medical evidence did not establish any severe hearing difficulty. Further, Dr. Fischer testified that Stewart's current R.F.C. would be applicable back to at least 2011. Finally, Dr. Fischer testified that based on Stewart's R.F.C., he would be capable of meeting the physical and mental demands of his past relevant work, and meet medium physical exertional work.

Dr. Jeffery Andert, an impartial psychological expert, then testified on Stewart's mental abilities. Dr. Andert's opinion was based on his conclusion that Stewart suffered from an affective disorder, as either a major depressive disorder or a depressive disorder not otherwise specified. Dr. Andert testified that Stewart suffered from PTSD and an indicated potential substance addiction disorder. Further, Dr. Andert found that Stewart's impairment caused limitations in his ability to work, including "a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace . . . and one or two episodes of deterioration[1]." [DE 10 at 83-84]. Dr. Andert found that Stewart could also perform, make decisions, and respond to simple and repetitive tasks. Dr. Andert concluded that Stewart could not handle a fast-paced work environment or a position with production quotas, could not work in environments where supervisors monitored the employer for more than one-third of the day.

Lastly, Dr. Leonard M. Fisher[2], a non-examining vocational expert ("VE"), testified

---

[1] The context of Dr. Andert's quoted testimony, as reported in the hearing transcript, shows that Dr. Andert was likely referring to periods of "decompensation" consistent with the Paragraph B criteria used to assess mental impairments.
[2] The Court notes the similarity in names between the VE, Dr. Leon Fischer, and the impartial medical expert, Dr. Leonard M. Fischer.

having reviewed Stewart's record. Dr. Fisher identified alternative jobs, as listed in the Dictionary of Occupational Titles ("DOT"), that a person with Stewart's R.F.C., age, and work experience would be capable of performing. Dr. Fisher testified that Stewart had past work as a janitor-maintenance, infantry-crewmember, and reconnaissance/radio operator citing DOT 382.664-010; DOT 378.367-010; and DOT 378.684-10. At the hearing, the ALJ presented a number of hypotheticals to Dr. Fisher to complete an assessment of Stewart's work capabilities. Dr. Fisher opined that Stewart would be able to perform medium unskilled work in occupations such as cleaner-industrial, laborer-stores, and cleaner-manufactured buildings citing*ee* DOT 381.687-018; DOT 922.687-058; DOT 869.687-018.

**C.    The ALJ's Determination**

After the February 2014 hearing, the ALJ issued a written decision on his findings. The ALJ applied the eight-part test prescribed through Social Security regulations in reaching his conclusion that as of November 15, 2011, Stewart was no longer disabled. *See* 20 C.F.R. § 404.1594.

At Step One, the ALJ identified the Comparison Point Decision ("C.P.D.") as August 6, 2008 when Stewart was originally found disabled. The ALJ found that Stewart's medically determinable impairments included a closed head injury, degenerative disc disease, migraines, hearing loss, and PTSD. Further, the ALJ found that Stewart's disability ended as of November 15, 2011. The ALJ cited to both testimony and a financial statement, which showed that Stewart was not receiving D.I.B. The ALJ also found that Stewart was not engaged in substantial gainful activity ("S.G.A."). At Step Two, the ALJ found that the medical evidence established that Stewart had not developed any additional impairments from the C.P.D. through November 15,

2011.  Accordingly, the ALJ found that Stewart had the same impairments that he had at the time of C.P.D.

Then at Step Three, the ALJ applied the medical improvement standard and determined that Stewart did not have an impairment or combination of impairments listed impairment found in Appendix 1.  20 C.F.R. § 404, App. 1.  Next at Step Four, the ALJ determined that Stewart had experienced a medical improvement as of November 15, 2011.  Further, the ALJ considered the entire medical record, determined Stewart's R.F.C. as of November 15, 2011, and determined that Stewart's medical improvement related to his ability to work because it resulted in an increase in Stewart's R.F.C.  The ALJ skipped Step Five, because the medical improvement was related to Stewart's ability to do work, and therefore a determination of any medical improvement exceptions was not necessary.

In Step Six, the ALJ found Stewart's impairments were considered severe.  20 C.F.R. § 404.1521.  The ALJ found that Stewart's impairments cause more than minimal limitation in his ability to perform basic work activities.  Finally, at Step Seven, the ALJ determined based on Stewart's R.F.C., age, education, and past work experience that he could perform past relevant work as a janitor-maintenance.  The ALJ determined that this type of work does not require the performance of work-related activities precluded by Stewart's assessed R.F.C.  20 C.F.R. § 404.1565.  The ALJ concluded that Stewart can make a successful adjustment to other work, and found that Stewart was not disabled.

### D.      Appeals Council's Decision

Stewart appealed the ALJ's decision to the SSA Appeals Council.  On June 3, 2015, the Appeals Council denied Stewart's request for review finding that the information provided by

Stewart did not provide a basis for changing the ALJ's decision. Since the review by the Appeals Counsel is the final decision of the Commissioner, Stewart now seeks judicial review.

## III.    ANALYSIS

### A.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Therefore, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

In reviewing of the Commissioner's findings, a district court will apply a standard of deferential review to the ALJ factual findings and will affirm if substantial evidence support the findings. 42 U.S.C. § 405(g). *Haynes v. Barhart*, 416 F.3d 621, 626 (7th. Cir. 2005). The district court will not reconsider facts, re-weigh evidence, resolve conflicts in evidence, decide questions of credibility, nor substitute its own judgment for the ALJ. *Haynes v. Barhart*, 416 F.3d 621, 626 (7th. Cir. 2005). Therefore, the district court will use judicial review only to determine whether the ALJ presented a "logical bridge" between the evidence and his findings. *O'Connor-Spinner v. Astrue*, 627 F.3d 615,618 (7th. Cir. 2010).

The SSA regulations provide an eight-part test to determine whether a claimant's disability continues or ends. 20 C.F.R. § 404.1594. The review of disability may stop at any step if sufficient evidence shows the claimant cannot engage in S.G.A. At the first step, the ALJ determines if the claimant is engaging in S.G.A. 20 C.F.R. § 404.1594(f)(1). If the claimant is engaged in S.G.A., then the disability has ended. *Id.* At the second step, the ALJ determines if the claimant's impairment or combination of impairments meets the Listing found in appendix 1 of the statute. 20 C.F.R. § 404.1594(f)(2). If the claimant does have an impairment or combination of impairments that meets a Listing, then the disability will be found to continue. *Id.* At the third step, the ALJ determines if the claimant has had a medical improvement. 20 C.F.R. § 404.1594(f)(3). If a medical improvement exists, as shown by a decrease in medical severity, then the ALJ proceeds to step four. *Id.* If there has been no decrease in medical severity, there has been no medical improvement and the ALJ proceeds to step five. *Id.*

At Step Four, the ALJ starts with an assessment of the claimant's R.F.C. in order to determine if the claimant's medical improvement is related to his ability to do work, or in other words, whether there has been an increase in the claimant's R.F.C. based on the impairment(s) that were present at the time of the most recent favorable medical determination. 20 C.F.R. § 404.1594(f)(4). If the claimant's medical improvement is not related to his ability to do work, then the ALJ proceeds to step five. *Id.* However, if the medical improvement is related to the claimant's ability to do work, then the ALJ moves on to step six. *Id.*

At Step Five, the ALJ determines whether any group exceptions to medical improvement apply. 20 C.F.R. § 404.1594(f)(5). If no exceptions apply, then the disability will be found to continue. *Id.* If an exception from the first group of exceptions applies, the ALJ proceeds to step six. *Id.* Yet when an exception from the second group of exceptions applies, the claimant's

disability ends.  *Id.*  The second group of exceptions to medical improvement may be considered at any point in this test.  *Id.*

At Step Six, the ALJ determines whether all of the claimant's current impairments in combination are severe under 20 C.F.R. §§ 404.1521; 404.1594(f)(6).  The severity analysis involves consideration of the claimant's current impairments and the impact of the combination of those impairments on his ability to function.  *Id.*  If the R.F.C. shows a significant limitation of the claimant's ability to do basic work activities, then the ALJ proceeds to step seven.  *Id.*  Impairments will not be considered severe in nature when the evidence shows that all current impairments in combination do not significantly limit the claimant's physical or mental abilities to do basic work activities.  *Id.*  If the claimant's impairments are found not to be severe, the claimant's disability ends.  *Id.*

At Step Seven the ALJ assess the claimant's current ability to do S.G.A. by assessing the claimant's R.F.C. based on all the claimant's current impairments and then considering whether the claimant can still perform work he did in the past.  20 C.F.R. § 404.1594(f)(7).  If the claimant can perform his past work, then his disability has ended  *Id.*  If the claimant cannot do the past work, then the ALJ proceeds to Step Eight.  *Id.*  At Step Eight, the ALJ determines whether the claimant can do other work given his R.F.C., age, education, and past work experience.  20 C.F.R. § 404.1594(f)(8).  If the claimant can do other work based on these factors, then the claimant's disability ends.  *Id.*  If the claimant cannot, then the claimant's disability continues.  *Id.*

An exception to this test is applied and invokes Step Eight when the evidence in a claimant's file about past relevant work is not sufficient to make a finding under Step Seven.  20 C.F.R. § 404.1594(f)(9).  If the claimant can adjust to other work based on their age, education,

and R.F.C., then the claimant is no longer disabled. *Id.* If the claimant is unable to adjust to other work, or if 20 C.F.R. § 404.1561 applies, then the ALJ determines whether the claimant can perform past relevant work. *Id.*

**B.      Issues for Review**

Stewart seeks remand of the ALJ's decision, arguing that: (1) the ALJ failed to evaluate the entire period of disability subject to adjudication; (2) the ALJ failed to properly apply the Medical Improvement Standard; (3) the vocational conclusion is not supported by substantial evidence; and (4) the ALJ failed to properly weigh the opinion evidence in determination of Stewart's impairment.

**C.      The ALJ's Decision was Consistent with Social Security Regulations in Regards to Evaluate the Entire Time Period Subject to Adjudication**

Stewart first argues that the ALJ's decision that his disability ended on November 15, 2011, was inconsistent with SSR 13-3p[3], which sets forth the period subject to adjudication. Specifically, Stewart asserts that the ALJ did not make any legal findings relating to the period of November 16, 2011, through March 28, 2014, the date of his opinion. [DE 10 at 18-30]. Stewart argues that SSR 13-3p requires the ALJ to consider evidence from the timeframe of his disability through the date on which the appeal determination or decision is made. Stewart states that a plain reading of the decision demonstrates that the ALJ did not adjudicate through the published date of March 28, 2014, as required.

Published in 2013, SSR 13-3p adopted a new nationwide policy regarding the time period of adjudication for reviewing a decision to cease D.I.B. due to an improvement of the claimant's

---

[3] The SSA publishes Notices of Social Security Ruling (SSR) which outline determinations, decisions, and interpretations of the law and regulations made at all levels of administrative adjudication, including federal court decisions, SSA Commissioner's decisions, and opinions of the Office of the SSA General Counsel. Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all SSA components. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999) (internal citations omitted) (citing 20 C.F.R. § 402.35(b)(1)).

medical condition.  SSR 13-3p states that "the adjudicator reviewing the medical cessation determination or decision will decide whether the beneficiary is under a disability through the date of the adjudicator's determination or decision."  The reviewing court will "generally defer to an agency's interpretations of the legal regime it is charged with administrating."  *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th. Cir. 2009).

The issue here is whether the ALJ considered evidence of Stewart's disability for the whole period from the time of medical cessation until March 28, 2014, when the ALJ's opinion was published.  Stewart references that the ALJ found the Stewart's disability ended November 15, 2011.  Further, Stewart states that the ALJ determined Stewart's R.F.C. as of November 15, 2011.  In the opinion, the ALJ did not explicitly state that the period subject to adjudication was between the C.P.D. and the date of the decision.  However, the ALJ acknowledged the period subject to adjudication at the evidentiary hearing on February 26, 2014, where he said

> So what we'll be looking it is whether there has been any medical improvement. To do that, we'll be look [sic] at the situation back on [the comparison point date of] 8/6/2008 and the situation to now.

[DE 10 at 39].

Further, the ALJ's decision shows that he applied the correct period through his citations to relevant evidence.  For instance, the ALJ cited to the opinions of expert witnesses, a functional report completed by Stewart, and other medical records compiled after November 15, 2011.  The ALJ also cited to CT scans from October 25, 2012.  Additionally, the ALJ explained that weighed testimonial evidence substantially in light of medical evidence already provided on the record.  [DE 10 at 26-27].  The ALJ also cited to the January 27, 2012, psychiatric evaluation from the VA Clinic of Northern Indiana.  If the ALJ had intended to adjudicate using evidence from the C.P.D. only through November 15, 2011, then the decision would not include evidence

entered into the record at the evidentiary hearing and from medical evidence dated past November 15, 2011.

Therefore, the ALJ analyzed Stewart's disability from the date of cessation, November 15, 2011, through March 28, 2014, the date of his decision. For the forgoing reasons, the ALJ's decision is consistent with the period subject to adjudication required under SSR 13-3p.

### D. The ALJ Properly Applied the Medical Improvement Standard

Stewart also asserts that the ALJ improperly applied the medical improvement standard in the analysis of the eight-part test. Stewart argues that the ALJ did not cite any evidence in the section of his decision addressing the medical improvement to show the determination of the C.P.D. and therefore, concluded that the ALJ did not apply the correct medical improvement standard. [DE 10 at 6-7]. Further, Stewart argues that the incorrect application of the medical improvement standard led the ALJ to determine an inaccurate R.F.C. for Stewart. In response the Commissioner argues that the ALJ found Stewart medically improved and explained the reasoning throughout the R.F.C. findings. The Commissioner also argues that the Court should review the ALJ's decision as a whole to see that the ALJ explained his reasoning for the medical improvement in other sections of his decision.

At Step Three of the eight-part test, the ALJ applies the medical improvement standard to determine whether a medical improvement is shown by a decrease in medical severity from the time of the most recent favorable medical decision that the claimant currently is or was disabled. 20 C.F.R § 404.1594(f)(3). The medical improvement standard helps the ALJ determines a claimant's R.F.C. When evaluating whether a decrease in medical severity exists, the ALJ looks for changes, or improvement, in the symptoms, signs and/or laboratory findings associated with the claimant's impairments. 20 C.F.R § 404.1594(b)(1).

Here, the Commissioner is correct that the ALJ explained his application of the Medical Improvement Standard in other sections of his decision rather than in the Step Three section. However, ALJs need not repeat analyses in multiple section of the same opinion. *Curvin v. Colvin*, 778 F.3d 645,650 (7th. Cir. 2015). Moreover, courts should review ALJs decisions as a whole to fulfill their obligation to determine whether a logical bridge was formed between the evidence cited and the ALJ's conclusions. *Id.*; *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985). Therefore, as long as the ALJ supports his conclusions regarding a particular issue—in this case the application of medical improvement standard—somewhere in the decision, then the ALJ's analysis will not be discredited.

In the sub-section of the ALJ's decision addressing the Medical Improvement Standard as it related to Stewart, the ALJ initially cited various evidentiary material to lead to his conclusion that as of November 15, 2011, a medical improvement had occurred. The ALJ stated that the medical record shows Stewart used prescription medicine to manage his mental impairments. The ALJ also stated that a VA Clinic medical report showed that Stewart did not have any residual effects from his closed head injury. Further, the ALJ stated that Stewart testified to having fewer nightmares when on prescribed medicine. Finally, the ALJ referenced mental status examinations where Stewart was fully oriented and showed no signs of thought disorders.

Throughout his decision, the ALJ used multiple sources of evidence such as the psychological consultative examination and the VA medical records. While the ALJ did not include specific citations in the Medical Improvement Standard sub-section of his decision, he supported his medical improvement findings with the same evidence he used to determine Stewart's R.F.C. In addition, the ALJ referenced a CT scan report, which stated that Stewart's

head was normal, earlier in the decision.  Further, the ALJ again cited to the psychological evaluation by Dr. Eaton, which he previously referenced and which concluded that Stewart's thought process were logical, sequential, and relevant and did not demonstrate evidence of formal thought disorder.  The ALJ also cited a letter from the VA Clinic of Battle Creek stating that Stewart did not suffer from polysubstance abuse and that his PTSD symptoms had decreased.

The ALJ's reliance on multiple references to various evidence in Stewart's medical record throughout his decision shows that he applied the Medical Improvement Standard as required.  Accordingly, the ALJ supported his conclusion that Stewart had a decrease in medical severity with substantial evidence that formed a logical bridge to his conclusion.

### E.        The ALJ Properly Weighed the Opinion Evidence

Stewart also challenges the ALJ's decision arguing that he improperly weighed the opinion evidence by giving the most weight to the non-examining witnesses' opinions without properly analyzing the treating therapist's opinion.  First, Stewart contends that the ALJ should have given more weight to the letter written by Stewart's clinical social worker, Mark Henson-Bohlen.  Stewart states that reversible error occurred because the ALJ did not discuss what weight he gave Henson-Bohlen's letter, which assessed Stewart's current condition.  Second, Stewart asserts that the ALJ did not properly weigh the evidence of the service-connected disability assessment made by the VA.

#### 1.        Weight of Social Worker's Opinion

When assessing disability, the ALJ will consider all relevant evidence in the record, even if the evidence is not from an acceptable medical source or a nonmedical source.  20 C.F.R. § 404.1527.  The ALJ must explain why he does not credit evidence that would support strongly

16

a claim of disability, or why other evidence outweighs such evidence. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th. Cir. 2010) (citing *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007); *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001)).  Therefore, the ALJ's decision should articulate an analysis that encompasses the weight of all evidence cited when assessing disability.

Here, the ALJ cited to both medical and nonmedical opinions and articulated why he weighted each opinion as he did.

As to the nonmedical opinion of Stewart's father Jim, the ALJ only gave it little weight explaining that it was inconsistent with the majority of the medical record.  Further, the ALJ discounted Stewart's own testimony based on the CT scan that showed he no longer suffered from the effects of a closed head injury.  The ALJ also found Stewart's testimony less credible based on inconsistencies with the totality of medical evidence on the record.

In considering the medical opinions in the record, the ALJ gave significant weight to the opinion of Dr. Fischer, the impartial medical expert, because of his familiarity with the disability process and the consistency of his opinions with the record as a whole.  However, the ALJ gave only little weight to the opinion of Dr. Corcoran, the State agency medical consultant at the reconsideration level, who opined on February 4, 2012, that Stewart's physical impairments were "non-severe".  In so doing, the ALJ relied upon medical records from the VA Clinic of Battle Creek to find that Stewart's degeneration of his spine, hearing loss, closed head injury, and migraines actually qualified as severe physical impairments.

Despite his consideration of these opinions, the ALJ did not explicitly articulate the weight given to Henson-Bohlen's letter in his capacity as Stewart's social worker.  However, the evidence set forth in the letter is consistent with other evidence in the record to which the ALJ

clearly gave little weight.  The Commissioner argues that the Court should not even consider

Henson-Bohlen's letter because it did not actually contain an opinion about Stewart's R.F.C. or

disability.  The letter simply stated Stewart has PTSD as evidenced by his nightmares,

flashbacks, fear of crowds, panic attacks, and the fact that he is easily startled.  The letter also

noted that Stewart has headaches, stomach problems, and back pain.  All of those symptoms

were reported in the medical records from the VA Clinic of Northern Indiana.  For example, both

Henson-Bohlen's letter and the psychiatric evaluation from the VA Clinic of Northern Indiana

state that Stewart was diagnosed with PTSD and had a Global Assessment of Functioning

("GAF") score of 50.  Accordingly, the ALJ implicitly considered Henson-Bohlen's by

referencing the same substantive information found in other medical evidence in the record.

### 2.     Weight of VA Service Related Disability Assessment

Disability assessments from other governmental or nongovernmental agencies such as the

VA are not binding on the SSA when determining whether claimant is legally disabled so as to

qualify for D.I.B.  20 C.F.R. § 404.1504.[4]  Here, the VA determined that Stewart is eighty-

percent disabled according to its standards, yet the VA's determination does not establish that

Stewart is therefore entitled to D.I.B.  *See Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir.  2006);

*see also Bird v. Berryhill*, 847 F.3d 911 (7th. Cir. 2017).  In comparison to SSA disability

regulations, the factors used by the VA to assess disability require less proof of disability.

Further, there are differences in how the agencies evaluate claims, as the VA's evaluation is

strongly and uniquely pro-claimant rather than neutral.  *See* 38 C.F.R. § 4.3; *Hodge v. West*, 155

---

[4] This regulation was recently revised stated that "in claims filed on or after March 27, 2017, we will not provide
any analysis in our determination or decision about a decision made by any other governmental agency or a
nongovernmental entity about whether you are disabled . . . and entitled to benefits."  However, this revised
regulation was not in force at the time of Stewart's medical improvement decision and need not be considered here.

F.3d 1356, 1362 (Fed. Cir. 1998). As a result, the ALJ was not required to weigh the VA's assignment of eighty percent disability to Stewart.

### F. The ALJ's Vocational Analysis is Supported by Substantial Evidence

Stewart's final argument asserts that the vocational testimony of the vocational expert ("VE"), Dr. Fisher, was flawed and does not support the conclusion that Stewart can work. Specifically, Stewart contends that both his past relevant work and that the jobs the ALJ held Stewart can supposedly perform are not compatible with his R.F.C. Further, Stewart argues that the ALJ did not properly follow the procedures set forth in SSR 82-62 and 20 C.F.R. § 404.1565(a) in his evaluation of Stewart's past relevant work as a janitor.

SSR 82-62 regulates the procedure for determining a disability claimant's capacity to do past relevant work. Under SSR 82-62, an ALJ's decision must contain findings of fact as to (1) the claimant's R.F.C., (2) the physical and mental demands of the past job or occupation, and (3) whether the claimant's R.F.C. would permit a return to his past job or occupation.

Here, the ALJ admittedly presented a perfunctory analysis without clear findings of fact on each of these issues in finding that Stewart was capable of performing his past relevant work as a janitor. The ALJ simply relied on the VE's conclusion that Stewart had actually and generally performed work as janitor since he was originally found disabled and while he was receiving benefits. Indeed, Stewart had testified that he performed this job in 2007 and earned $10,689.54 that year. However, Stewart did not cross the $10,800 earnings mark that was required in 2007 for a job to qualify as S.G.A. *See Substantial Gainful Activity*, available at https://www.ssa.gov/oact/cola/sga.html (last visited March 30, 2017). Arguably, the ALJ could have completed the necessary findings of fact to support his conclusion that Stewart was no

longer disabled. He did not. Instead, he took the analysis one step further such that any error in his past relevant work analysis is harmless.

The ALJ solicited testimony from the VE about whether significant jobs in the national economy existed that a person with Stewart's R.F.C. could perform. The ALJ found that Stewart retained the R.F.C.

> to perform medium work as defined in 20 CFR 404.1567(c) as [Stewart] is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: [Stewart] is able to frequently climb, balance, stoop, kneel, crouch, crawl or operate foot controls and must avoid more than frequent exposure to humidity and wetness, pulmonary irritants such as dust, fumes and gasses, extreme temperatures and vibrations and moderate exposure to noise. In addition [Stewart] is able to understand, remember and carry out simple instructions, make judgments on simple work related decisions, respond to usual work situations and to changes in a routine work setting, would have to be isolated from the public and tolerate occasional contact with co-workers and supervisors and would need a workplace free from tandem tasks, teamwork or production quotas.

[DE 10 at 23]. Stewart now argues that parts of the R.F.C. were incompatible with the jobs identified by the VE.

In his testimony, the VE opined that a person of Stewart's R.F.C., age, education, and work experience would be able to perform medium unskilled work in occupations such as cleaner-industrial (DOT 381.687-018), laborer-stores (DOT 922.687-058), and cleaner-manufactured buildings (DOT 869.687-018). With regard to all three jobs, Stewart compares the plain language of the R.F.C. assigned by ALJ to the tasks identified in the DOT numbers associated with each of the three jobs. Without any legal citations or any reference to specific testimony by the VE to support his plain language analysis, Stewart suggests that the ALJ has not supported his conclusion that Stewart is capable of performing jobs available in the national economy with substantial evidence.

Yet Stewart asks the Court to discount the VE's testimony without recognizing that the ALJ noted that his analysis was based upon the guidance in SSR 00-4p. SSR 00-4 discusses the use of vocational expert evidence and directs ALJ's to ask VEs if "there is any possible conflict between [the] VE . . . evidence and information provided in the DOT." If such a conflict exists, the ALJ must then "obtain a reasonable explanation for the apparent conflict" and then explain how he resolved the conflict in his decision. *Id.* Here, the ALJ explicitly asked the VE, "Is your testimony consistent with the DOT and the companion publication, SCO?" [DE 10 at 104]. The VE clearly responded "Yes" and then explained how his opinion on two limitations not addressed in the DOT were based on his "experience in rehabilitation, talking with employers, workshop that [he] attend[s] in the rehabilitation psychological field, and also talking with other vocational experts." *Id.* Most notably, Stewart's counsel chose not to cross-examine the VE so as to point out any potential inconsistencies, including those raised before this Court.

Therefore, the ALJ properly relied upon the VE's testimony that Stewart was able to perform the jobs of cleaner-industrial, laborer-stores, and cleaner-manufactured buildings despite the limitations imposed by his R.F.C., age, education, and past work experience. Accordingly, the ALJ's vocational analysis is supported by substantial evidence.

## IV.  CONCLUSION

For the above reasons, the Court finds that the ALJ formed a "logical bridge" between the evidence and his conclusion that Stewart is no longer disabled. The ALJ (1) correctly analyzed Stewart's disability with evidence from the correct period of adjudication; (2) properly applied the Medical Improvement Standard; (3) supported his vocational analysis with substantial evidence; and (4) supported the weight given to opinion evidence with substantial evidence.

Accordingly, this Court **AFFIRMS** the ALJ's finding that Stewart's disability ended on November 15, 2011, pursuant to sentence four of 42 U.S.C. § 405(g).  [DE 22].  The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

      **SO ORDERED.**

Dated this 31st day of March 2017.

                                           _s/Michael G. Gotsch, Sr._____

                                           Michael G. Gotsch, Sr.
                                           United States Magistrate Judge